UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CALVIN TIMBERLAKE and<br>KAREN TIMBERLAKE,<br><br>   Plaintiffs,<br><br>v.<br><br>SYNTHES SPINE COMPANY, L.P., *et al.*<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>CIVIL ACTION NO. V-08-4 |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants, Viscogliosi Brothers L.L.C., Marc Viscogliosi, John Viscogliosi and Anthony Viscogliosi's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #44). After considering the motion, response, and applicable law, the Court is of the opinion that the motion should be DENIED.

### Factual and Procedural Background

Plaintiffs brought this action against defendants after he underwent surgery implanting the artificial disc, ProDisc, and the device failed resulting in a second surgery and causing him permanent injury. Plaintiffs allege in their complaint causes of action for fraud/misrepresentation, violation of the FDA approval process, negligence, strict liability, breach of warranty and conspiracy. Relevant to this motion, Plaintiffs contend that Marc Viscogliosi, John Viscogliosi and Anthony Viscogliosi, through Viscogliosi Brothers LLC ("VB"), formed Spine Solutions, Inc. to obtain FDA approval for and eventually market the ProDisc. In furtherance of this endeavor, the Defendants solicited physicians to conduct the clinical investigations of the ProDisc who were also willing to invest in Spine Solutions. According to Plaintiffs, the Defendants stated that having investor-physicians conduct the clinical trials would result in their ability to more readily obtain

other investors and would ensure that the physicians were "in [their] pocket"[1] so that the outcome of the clinical trials would be favorable to the Defendants. Defendants specifically solicited Dr. Jack Zigler of the Texas Back Institute in Plano, Texas to lead the clinical trials. On October 3, 2001, the first implantation of the ProDisc in the United States was performed by Dr. Zigler in Plano, Texas, and thereafter he performed the most clinical trial implantations of the device. Defendants were successful in locating approximately a dozen doctors and clinics who agreed to invest in their company while also participating in the clinical trials, including one other physician in Tyler, Texas.[2] On April 4, 2003, Synthes Spine, Inc. ("Synthes") purchased Spine Solutions. Synthes completed the clinical trials and ultimately applied for and received pre-market approval from the FDA for use of the device.

Prior to the device's approval by the FDA and while it was still undergoing clinical trials, Plaintiff, Mr. Timberlake, began researching alternative treatment options for his degenerative disc disease because traditional treatments were not resolving his condition. Mr. Timberlake read multiple reports of the successes of the ProDisc trials and discussed the possibility of having the ProDisc implanted with his doctor. Mr. Timberlake specifically read claims by Dr. Zigler that he had presided over the study of the ProDisc and that the ProDisc had significantly better outcomes than other available treatment options. He relied on the reports in his ultimate decision to have the ProDisc implanted.

Plaintiffs allege the Defendants made intentional, material misrepresentations and committed fraud by: (1) failing to disclose to the FDA, to the public, to non-trial doctors and to Mr. Timberlake

---

[1] P.'s First Amended Original Complaint, dkt. #8, ¶ 36.

[2] *Id.* at ¶ 38.

that doctors and clinics that were participating in the clinical trials would benefit financially if the FDA approved the device and from the sale of the device; (2) by failing to disclose the financial interest of the Texas Back Institute and Dr. Zigler, the lead investigator for the ProDisc FDA trials, if the device was approved for sale; (3) by providing incomplete and misleading information concerning the clinical trials; and (4) by conducting improper testing on the device.[3] Further, Plaintiffs allege that the Defendants circumvented the pre-market approval process of the FDA by providing financial incentives to physicians who were performing the clinical investigations, directly violating the FDA approval process.

Defendants have filed the instant motion to dismiss under Rule 12(b)(2) arguing that the Court lacks personal jurisdiction over them. VB is a New York limited liability company with its principal place of business in New York, New York. The individual Viscogliosi defendants are also residents of New York, New York. Defendants argue that this case does not arise out of any of their contacts in Texas, and they rely heavily on the fact that they sold their interest in Spine Solutions to Synthes in 2003. Therefore, at the time the FDA approved the ProDisc in August 2006, and at the time Mr. Timberlake received the ProDisc implantation in December 2006, the Defendants did not own Spine Solutions or the ProDisc technology. Further, the Defendants did not design, manufacture, market, distribute or sell the ProDisc in Texas or anywhere else. Defendants assert that the Plaintiffs conclusory allegations that they are "doing business in Texas" is insufficient to establish jurisdiction, and that they do not have sufficient contacts with Texas to satisfy the requirements for general or specific jurisdiction.

---

[3]   *Id.* at ¶ 47(a).

**Standard of Review**

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the applicable law of the forum state. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). In this case, the Texas long-arm statute extends to the limits of due process. *Id.* Therefore, the inquiry collapses into whether Texas can exercise personal jurisdiction over the Defendants consistent with the Due Process Clause of the Fourteenth Amendment. *Id.*

In order to satisfy due process requirements, the nonresident defendant must have "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). Minimum contacts with a forum state may give rise to general or specific jurisdiction. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 624 (5th Cir. 1999). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic" but are not related to the alleged cause of action. *Ruston Gas Turbines*, 9 F.3d at 419; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Plaintiffs do not argue that this Court has general jurisdiction, but seeks further discovery to determine if the Defendants have sufficient contacts with Texas to support general jurisdiction.

Plaintiffs do argue, however, that specific jurisdiction exists over the Defendants. When a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the forum state may exercise specific jurisdiction over a defendant. *Cent. Freight Lines*, 322 F.3d at 381 (quoting *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The court must assess the relationship between the defendants, the forum state, and the litigation to determine "whether the defendant[s] purposefully established 'minimum contacts' in the forum state" so that it was foreseeable "that the defendant['s] conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Guidry*, 188 F.3d at 624–25 (quoting *Burger King*, 471 U.S. at 474). The Fifth Circuit has articulated a three-step analysis to determine if specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, i.e. whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

When a defendant raises an objection to the court's personal jurisdiction, the burden is on the plaintiff to make a prima facie showing that jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). A prima facie case may be established "by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants." *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 917 (5th Cir. 1987) (per curiam). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the plaintiff's uncontroverted allegations and resolve any factual disputes in the plaintiff's favor. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (internal citation omitted). Because the Court has not held an evidentiary hearing in this case, the Plaintiffs must only make a prima facie showing that (1) each Defendant had minimum contacts with the forum state, and (2) the Plaintiffs' cause of action arises out of or relates to each Defendant's forum-

related contacts. *Bullion*, 895 F.2d at 217; *Guidry*, 188 F.3d at 625. Once the plaintiff satisfies this burden, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003).

**Discussion**

Defendants[4] assert that they do not have sufficient contacts with Texas to confer specific jurisdiction on this Court. However, taking all of Plaintiffs' uncontroverted allegation as true, it is clear that the Defendants have the necessary minimum contacts to satisfy due process. Defendants concede they traveled to Texas on occasion to meet with physicians, attend seminars, and to meet investors on behalf of Spine Solutions. They targeted and solicited Texas physicians for the purpose of investing in Spine Solutions and conducting clinical trials for the ProDisc. Specifically, they contacted Dr. Jack Zigler of the Texas Back Institute in Plano, Texas, who invested in Spine Solutions and ultimately became the lead investigator for the clinical trials. He performed the first implantation in October 2001, and he performed the most implantations, presumably on Texas residents. Another doctor in Tyler, Texas was also solicited by the Defendants and performed clinical trials of the ProDisc.[5] While Anthony and John Viscogliosi maintain they may have made representations regarding the ProDisc in casual conversations with physicians, but they do not recall

---

[4] Unless otherwise specified, each defendant is included in the term "Defendants." While the Court recognizes personal jurisdiction must exist as to each defendant separately, the evidence and affidavits submitted by each defendant is almost identical. The contacts relied upon by the Court in finding specific jurisdiction are the same for each defendant.

[5] *See* the webpage from the ProDisc Artificial Disc Clinical Trial Centers entitled *ProDisc Artificial Disc Clinical Trial Centers*, including the ProDisc clinical trial locations of Dr. Guy Danielson in Tyler, Texas and Dr. Jack Zigler in Plano, Texas. Dkt. #52.

any specific conversations, Marc Viscogliosi stated that he had conversations with the physicians involved in clinical trials.[6] The Defendants, thus, specifically and deliberately reached out to Texas physicians with the aim of entering into an ongoing relationship with them for the purpose of developing and testing the ProDisc and investing in Spine Solutions. These contacts by the Defendants with the state of Texas cannot be characterized as "random," "fortuitous," or "attenuated." *Id*. at 383. Defendants do not controvert these contacts or their purpose for initiating the clinical trials of the ProDisc with these particular doctors. Therefore, based on the Defendants enlistment of Texas physicians, repeated visits to Texas, and acquisition of large sums of money from Texas investors, the Court finds the Defendants have sufficient minimum contacts with this state.

Additionally, the crux of Plaintiffs' complaint stems from the specific contacts the Defendants made with Texas. Plaintiffs assert that the Defendants targeted, as investors, physicians who would conduct clinical trials of the ProDisc, assuring a conflict of interest. The Defendants deliberately concealed the bias of the investor-physicians and created a fraudulent scheme that resulted in inaccurate clinical trial results being reported to the detriment of the FDA, the public, the non-trial physicians and the Plaintiffs. Specifically, Plaintiffs point to Texas's Dr. Zigler as exaggerating the safety of the ProDisc in published reports relied upon by Mr. Timberlake in his decision to receive the implantation.[7] The record indicates that Dr. Zigler was one of the doctors originally solicited by the Defendants. Defendants do not deny that they were involved in soliciting

---

[6] *See* dkt. #44. *Compare* ex. A ¶ 16, ex. C ¶ 8 *with* ex. B ¶ 6.

[7] *See* the press release from the Texas Back Institute entitled *FDA Approves ProDisc-L for Treatment of Low Back Pain*, dated 8/16/06. Dkt. #51.

investor-physicians, and they do not deny that they made representations during the clinical trials in their official capacities. Each individual defendant's affidavit stated: "I did not make any representations to doctors, patients or the general public in Texas concerning ProDisc safety and effectiveness, other than in my capacity as an officer or board member of Spine Solutions, Inc."[8] Plaintiffs also allege that Mr. Timberlake's injuries were caused by the Defendants' improper testing of the device. Defendants do not deny that the testing and clinical trials of the ProDisc took place in Texas. As such, the injuries alleged in Plaintiffs' complaint arose out of the Defendants' contacts with Texas. *Guidry*, 188 F.3d at 628 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)) (When a nonresident defendant commits a tort within the state, or an act done outside the state that has "consequences or effects within the state [this] will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."). Where there is intentional and allegedly tortious activity aimed at Texas, the tortfeasor must " 'reasonably anticipate being haled into court there.' " *Calder v. Jones*, 465 U.S. 783, 790 (1984). Defendants, therefore, should have reasonably anticipated being haled into court in Texas on alleged intentional tort claims that were related to their solicitation of doctors and the subsequent clinical trials within this state.

In order to dispute the existence of jurisdiction, Defendants rely heavily on the fact that they sold Spine Solutions and the ProDisc during the clinical trials and prior to FDA approval.[9] Thus, at the time Spine Solutions applied for pre-market approval and had a legal obligation to make

---

[8] *See* dkt. #44, ex. A ¶ 16, ex. B ¶ 8, ex. C ¶ 8.

[9] Although Anthony Viscogliosi served as either President, Vice-Chairman or a Board Member of Spine Solutions even after the sale to Synthes up until May 2004. *Id.* ex. A ¶ 10.

8

disclosures to the FDA regarding the financial interests of the clinical investigators, Defendants did not own Spine Solutions or the ProDisc. In other words, the Defendants frame Plaintiffs' cause of action as solely a fraud on the FDA claim; however, Plaintiffs' claims include the Defendants' allegedly tortious conduct prior to the sale. Plaintiffs allege that the Defendants deliberately created a fraudulent scheme by having investor-physicians conduct clinical trials before selling Spine Solutions to Synthes.[10] Defendants were still owners of the device when the clinical trials began and, depending upon the representations made during that time, they may still have exposure to liability. Thus, the fact that the Defendants sold the company and rights to the ProDisc to Synthes prior to the conclusion of the clinical trials is relevant to their ultimate liablity, but does not impact the jurisdictional analysis. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006) (noting a defendant with the required minimum contacts cannot avoid personal jurisdiction by speculating as to whether another party will actually be liable for the injury).

Once it has been decided that a defendant purposefully established minimum contacts within the forum state that arise from or relate to plaintiff's cause of action, the burden shifts to the defendant to make a compelling case that the exercise of personal jurisdiction is unfair or unreasonable based on five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* Defendants have

---

[10] Prior to the sale, Anthony Viscogliosi served as CEO of Spine Solutions and VB was a shareholder. *Id.* ex. A ¶¶ 9, 14. Marc Viscogliosi served as the Vice President of Business Development of Spine Solutions and a Board Member. *Id.* ex. B ¶ 3. And John Viscogliosi served as a Board Member and Chief Financial Officer. *Id.* ex. C ¶ 3.

not made a sufficient showing that litigating this matter in Texas is unfair or unreasonable. The burden on the Defendants to litigate in Texas is no greater than the burden requiring Plaintiffs to litigate in New York. Defending this case in Texas will not place an unreasonable burden on the Defendants, given that they have traveled to Texas in connection with the clinical trials of the ProDisc and received investments from Texas physicians and clinics. This case involves injuries allegedly suffered by a Texas resident as a result of the Defendants' representations regarding the ProDisc, and a significant portion of the clinical trials took place in Texas involving numerous Texas residents. Thus, Texas has a substantial interest in litigating these claims against the Defendants. Obviously, the Plaintiffs have a strong interest in obtaining the convenient and efficient relief that can only be provided by a single lawsuit in their domicile against all defendants allegedly liable for Plaintiffs' injuries. The efficient resolution of this controversy is also served by maintaining a single litigation inclusive of all defendants. Thus, the exercise of personal jurisdiction in this Court is reasonable and comports with due process.

Finally, the individual defendants argue they are protected from personal jurisdiction by the fiduciary shield doctrine because the contacts they made with Texas were in their capacities as corporate officers. It is well established that jurisdiction over an individual defendant cannot be predicated on that individual's contacts with the forum state in his corporate representative capacity. *Davey v. Shaw*, 225 S.W.3d 843, 856 (Tex. App.–Dallas 2007, no pet.). However, a corporate officer is not protected from the exercise of specific personal jurisdiction if the officer engaged in tortious or fraudulent conduct directed at the forum state for which he may be held individually liable. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 732–33 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (citations omitted); *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 768 (Tex.

App.–Waco 2007, no pet.). Further, this doctrine applies to the exercise of general jurisdiction, not specific. *Id.* (citing *Brown v. Gen. Brick Sales Co.*, 39 S.W.3d 291, 300 (Tex. App.-Fort Worth 2001, no pet.)). Because the Court has found that exercising personal jurisdiction over the individual Defendants comports with due process and the allegations of tortious allegations directed at the Defendants expose them to personal liability, the fiduciary shield doctrine does not protect them from defending this lawsuit in Texas.

### Conclusion

Accordingly, the assertion of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. The Court expresses no opinion on whether the Plaintiffs' claims have any merit; however, the Court finds that, based on the Plaintiffs' complaint and the affidavits submitted, Plaintiffs have made an adequate prima facie showing that the Defendants have sufficient contacts with Texas for this Court to exercise personal jurisdiction. As such, Defendants, Viscogliosi Brothers L.L.C., Marc Viscogliosi, John Viscogliosi and Anthony Viscogliosi's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #44) is DENIED.

It is so ORDERED.

SIGNED this 11th day of July, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE