IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CALVIN TIMBERLAKE, ET AL | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | CASE NO. 6-08-CV-4 |
| | § | |
| SYNTHES SPINE COMPANY, L.P., | § | |
| ET AL | § | |
| | § | |
| DEFENDANTS | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS SYNTHES SPINE COMPANY AND SPINE SOLUTION INC'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT ELIAS BENHAMOU, M.D.

Comes now Plaintiff Calvin Timberlake and files his Response to the Motion by the Defendants Synthes Spine Company, L.P. and Spine Solutions, Inc ("Defendants" herein) to exclude the testimony of Plaintiff's' expert witness Elias Benhamou, M.D., asking that the motion be denied in all respects, and for cause will show:

1. **"Gatekeeping" is Not Necessary in this Case.** In systematically challenging every expert opinion offered by the Plaintiff in this case, Defendants lose sight of the purpose of a *Daubert* objection and the trial court's role in such proceeding. Full "gatekeeping" proceedings are not required here because this is an ordinary case where the reliability of Dr. Benhamou's methods can be properly taken for granted and his reliability has not been called sufficiently into question. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-52 (1999). Nevertheless,

Plaintiff will demonstrate to the Court that Dr. Elias Benhamou is, indeed, qualified to give his opinions in this case, his methodology is reliable, and his opinions are relevant. Defendants do not deal whatsoever with the education, training and experience Dr. Benhamou does have, and focus only on the things he has not done. It is the things Dr. Benhamou has done that qualify him, and the things he has not done, are not necessary under the law.

2. **Defendants Arguments are Largely Irrelevant Given Dr. Benhamou's Limited Opinion Testimony.** Dr. Benhamou's testimony in this case is simply that the dislodging of the ProDisc and subsequent removal surgery caused a pedicle fracture of Mr. Timberlake's spine and other injuries, which he in reasonable medical probability would not have had with a conventional fusion. Dr. Benhamou is a medical doctor who specializes in pain management and has been Mr. Timberlake's treating physician since before the ProDisc implantation. His opinions are limited to his expertise as Mr. Timberlake's pain management physician and to the cause of his injuries from the time of the disc's failure.

What Dr. Benhamou does not opine about is what caused the disc to fail in the first place or how it failed. He makes clear in his affidavit and in his deposition that he in not offering any opinions in this area. It is unclear, then why Defendants spend the majority of their motion arguing that he is not what he admits he is not -- an expert in the design of artificial discs, or in why or how the disc failed. Plaintiff has offered other experts, including biomechanical engineers and orthopoedic surgeons, to make that causal link. There is nothing in the law that requires one expert alone to prove the entire causation link, and Defendants cite to none.

What is left, then, of Defendants' argument is their contention that Dr. Benhamou is not qualified to offer an opinion that the failure and removal of the ProDisc caused injuries to Mr. Timberlake. Plaintiff will show that this is not true and the Dr. Benhamou is imminently

qualified to give his opinion.

3. **Dr. Benhamou is Qualified to Give the Opinions in this Case.** Dr. Benhamou testifies that "the failure of the disc and the required removal has resulted in problems that Mr. Timberlake did not have before the implantation and has exacerbated his back problems. The failure of the disc resulted in bilateral pedicle fractures with attendant muscle and ligament injury. The removal of the failed disc resulted in additional injury to Mr. Timberlake."

Dr. Benhamou is qualified by skill, knowledge, experience, training, and education to give an opinion in the area of back injuries. *See* FED. R. EVID. 702.; *McCullock v. H.B Fuller Co.*, 61 F.3d 1038, 1042-43 (5th Cir. 1995.) The test for qualification is whether the expert has the proper educational background or requisite experience to be qualified as a person with specialized knowledge. Here, Dr. Benhamou has both the education and the experience for such specialization. In any event, a lack of specialization does not affect the admissibility of the expert opinion, only the weight to be given to that opinion. *See Compton v. Subaru, Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996). As long as some reasonable indication of qualification is offered, the testimony can be admitted and the expert's qualifications become an issue for the trier of fact, not the court. *Rushing v. Kansas City S.Ry.*, 185 F.3d 496, 507 (5h Cir. 1999.)

Dr. Benhamou is a medical doctor who has been practicing pain management since 2002. His is board certified in anesthesiology and is board eligible for pain management. His practice includes the assessment of the cause of back pain, prescribing the appropriate medication, and the implantation of spinal cord stimulators and pain pumps. *(See C.V. of Dr. Benhamou attached as Exhibit 1; See Pages 14-15 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)*

Dr. Benhamou obtained his Doctorate of Medicine, cum laude, from the University of Paris in 1985. While in school, he received awards for this Medical Thesis and a research

grant, and had articles published. In 1987, he was a Research Fellow at the University of Illinois at Chicago College Of Medicine. He then served internships and residencies in New York, New York, and Baylor College of Medicine in Houston, Texas. He began as a junior partner in intervention pain management in a prominent pain practice in 2002 and since that time has owned medical practices specializing in pain management in Houston and Victoria, Texas. *(See Exhibit 1)*

This extensive and specialized education, training, and experience of Dr. Benhamou clearly qualifies him as an expert in spinal injuries and pain management. This case is nothing like the one relied on by Defendants, *Kazak v. Medtronic*, 512 F.Supp. 2d 913, 918 (S.D. Tex 2007) This was a district court opinion that dealt with an orthopedic surgeon testifying on future damages, where nothing was shown he was an expert in financial matters or damages. Here, Dr. Benhamou's opinion relate directly to his field of study and expertise.

### 4. Dr. Benhamou's Opinions are Reliable.

#### (1) His methodology and testimony is generally accepted.

> Dr. Benhamou's testimony and methodology is reliable because his theories, concepts and techniques are support by objective empirical studies. *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 454 (8th Cir. 2008.) They also have gained general acceptance in his discipline. *Id.* at 454.)

Dr. Benhamou's opinions are based on his medical education, his training in pain management, and his experience as Mr. Timberlake's treating physician for the last five years, both before and after the ProDisc implantation. Dr. Benhamou observed Mr. Timberlake's Xray following the ProDisc's failure and saw the pedicle fracture that was not present before. He testified in his deposition that the fracture was so severe and obvious that it would not happen without severe trauma or something going terribly wrong with the implantation surgery. *(See*

*Pages 143-152 of the deposition of Dr. Benhamou which is attached as Exhibit 2).* He does, therefore, rule out other causes.

Defendants take Dr. Benhamou's statement that he is not an expert in the cause of pedicle fractures out of context. *(See Pages 151 & 169 of the deposition of Dr. Benhamou which is attached as Exhibit 2).* Dr. Benhamou goes to great lengths to explain that this particular pedicle fracture was not a "subtle medical problem. We're talking about it really is broken or it's not broken.... This is a first-year medical school thing. There is nothing difficult here. *(See Pages 150-152 of the deposition of Dr. Benhamou which is attached as Exhibit 2).* Mr. Timberlake's implantation surgery went "terribly wrong" so that Dr. Benhamou has had prescribed 80 milligrams of Oxycotin 2 times a day to manage his pain, probably for the rest of his life.

Dr. Benhamou therefore does not disclaim his expertise, but explains its parameters. He testifies that he is an expert to testify about the cause of Mr. Timberlake's fracture and his pain. *(See Pages 165-167 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)* He testifies that he is an expert in failed back syndrome and that his affidavit is based on reasonable medical probability that Mr. Timberlake would have been better off with a fusion. *(See Pages 184-185 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)*

**(2) Dr. Benhamou's Underlying Facts and Data are Sufficient.** Dr. Benhamou's opinions are supported by sufficient facts, and data. See FED. R. EVID. 702. The factual basis of an expert's opinion, however, generally relates to the weight a jury should give that opinion and the expert's credibility, not to the testimony's admissibility. *In re Scrap Metal Antitrust Lit.*, 527 F.3d 619, 521-32 (6th Cir. 2008).

Dr. Benhamou bases his opinion on the best facts and data possible -- his personal knowledge and treatment of Mr. Timberlake for the past five years. His file on Mr. Timberlake

consists of literally hundreds of pages of medical records that he generated and which took him 20 - 24 hours to review for his deposition. *(See Pages 24 and 63 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)* As Mr. Timberlake's treating physician, his opinions are based on personal knowledge of his condition combined with his medical knowledge and skill. This fact and the fact that he was not paid for his testimony sets him apart and in some ways, above, other experts. *(See Page 183 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)*

Dr. Benhamou purposely did not read the deposition of other experts in this case provided to him by Plaintiff's counsel, for the stated reason that he did not know much about the ProDisc and therefore it would not be helpful to him; he not want to be biased. *(See Pages 35-38 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)* He was the only doctor to have seen Mr. Timberlake before and after the disc's implantation and "is here to state facts." He is an expert on the cause of Mr. Timberlake's pain and was treating him for the pain that was generated by "this catastrophic event." *(See Pages 156 and 165 of the deposition of Dr. Benhamou which is attached as Exhibit 2.)*

Based on his expertise in this area, these data and facts gave Dr. Benhamou a sufficient basis to come to conclusions concerning the cause of Mr. Timberlake's injuries and pain.

### 5. Dr. Benhamou's Opinons are Relevant.

As shown above, Dr. Benhamou's opinions concern the cause of Mr. Timberlake's injuries caused by the disc's failures and the extent of those injuries. These opinions are directly related to the issues the jury will be asked to resolve concerning the causation of Mr. Timberlake's injuries. Defendants' challenges go only the weight and credibility of Dr. Benhamou's testimony and not to its admissibility. *See In re Scrap Metal Antitrust Litig.,* 527

F.3d at 531-32. The gatekeeper's focus is on principles and methodology, not on the conclusions that they generate. *Daubert v. Merrill Dow Pharms*, 509 US. 579, 595 (1993) The gatekeeper's role is not intended to replace the adversary system; vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence. *See Olson v. Ford Motor Co*, 481 F.3d 619, 626 (8th Cir. 2007) The ultimate credibility determination and the testimony's accorded weight are for the jury to decide. *Seahorse Mar. Sups. v. Puerto Rico Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002.)

### 6. Courts have consistently allowed treating physicians to testify concerning causation.

As Plaintiff's treating physician, Plaintiff submits that Dr. Benhamou is qualified to express his opinions concerning his patient's medical pre-implant condition, post-implant condition, post-explantation condition and present condition. Injury cause or specific causation related to the patient's medical condition is a usual, customary and permissible role of a treating physician. The fact that the device failed is uncontroverted. Dr. Benhamou is stating his specific causation opinion based on experience and under these facts is therefore reliable. Unlike in *Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786 (1993)*, and *Merrell Dow Pharmaceuticals, Inc., v. Havner 953 S.W. 2d 706 (Tex. 1997)*, Dr. Benhamou is not, nor under these facts is he required to rely on scientific or epidemiological studies and methodology's for general causation based on the disease causing propensities of a chemical compound. His basis for opinion as to the specific change or cause in his patient's condition is readily apparent from medical deductive logic and physician experience and observation. Plaintiff's history, medical records and radiographic studies cause this case to differ significantly

even from the diagnostic causation of the disease syndrome testimony disfavored in *Black v. Food Lion, Inc. 171 F. 3d 308, 314 (5th Cir. 1999).*

Courts have consistently relied on the observations at treating physicians in upholding causation. See *Williams v. Reading & Bates Drilling Co., 750 F.2d 487, 489 (5th Cir. 1985).* Other District Courts in the 5th Circuit, the Southern District of Texas, and elsewhere have observed:

> Treating physicians are not retained for purposes of trial. Their testimony is based upon their personal knowledge and the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial. They are witnesses testifying to the facts of their examination, diagnosis and treatment of a patient. It does not mean that the treating physicians do not have an opinion as to the cause of an injury based upon their examination of the patient or to the degree of injury in the future. These opinions are a necessary part of the treatment of the patient. Such opinions do not make the treating physicians experts as defined by *Rule 26(b)(4)(C)*.

*Linquist v. Union Pacific R.R Co., 2008 U.S. Dist. LEXIS 81464, 7 (E.D. Tex. 2008), Citing Piper v. Harnischfeger Corp., 170 F.R.D. 173, 175 (D. Nev. 1997);* (See Linquist attached as Exhibit No. 5) *Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D. Colo. 1995).* See also *Guidry v. Fairways Offshore Exploration, Inc., 2008 U.S. Dist. LEXIS 78884, 22 (S.D. Tex. 2008)* (See Guidry attached as Exhibit No. 6)

Here, Dr. Benhamou is aware of the trauma - the dislodged disc, and the effect - nerve, ligament, muscle, vascular and bone injury, upon his patient. He is not postulating as to a disease process related to a trauma as in *Black*, nor has he offered biomechanical engineering or general causation of failure of the hideous device at bar. Specific causation is a valid and reliable area of inquiry for Dr. Benhamou. *Minnesota Mining and Mfg. Co. v. Atterbury 978 S.W. 2d 183, 193 (Tex. App.-Texarkana 1998, pet. denied); Rehabilitative Care Systems of*

*America v. Davis 43 S.W. 3d 649, 663 (Tex. App.-Texarkana 2001), affi'd, 73 S.W. 3d 233 (Tex. 2002).* There is no analytical gap. See *Huss v. Gayden 571 F.3d 442, 452 (5th Cir. 2009), Bartley v. Evelid, Inc. 180 F.3d 175 (5th Cir. 1999).*

It is clear from the discussion above that Dr. Benhamou's expert testimony will be helpful to the trier of fact in this case, and therefore should be admitted.

WHEREFORE, Plaintiff respectfully prays that the Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Elias Benhamou, M.D., be in all respects denied.

Respectfully submitted,

COLE, COLE & EASLEY, P.C.
302 W. Forrest Street
Victoria, Texas 77901-0510
Ph: (361) 575-0551
Fax: (361) 575-0986

/s/
_____
REX L. EASLEY, JR.
State bar No. 06358425
Federal I.D. No. 5996
JIM COLE
State Bar NO.: 04538500
Federal I.D. No. 5883
WILLIAM L SCIBA, JR.
State Bar No. 00792824
Federal I.D. No: 190044
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

By my signature above, I certify that a true and correct copy of the foregoing instrument was delivered to all counsel of record in accordance with the applicable Federal Rules of Civil Procedure on this the 23rd day of September, 2010.